[No. 17713.    Department Two.    May 11, 1923.]

JAMES TREJBAL, *Respondent,* v. PACKARD FARMERS WAREHOUSE COMPANY, *Appellant.*[1]

WAREHOUSEMEN (4)—LIABILITY—LOSS BY FIRE—"COMMON STOCK." Grain in two warehouses of one concern is not common stock, and owners of grain deposited in the one are not liable to contribute to the owners of grain in the other destroyed by fire, where there was no agreement between the owners making it common stock, there was no physical connection between the warehouses, which were 180 feet apart, each was licensed and operated independent of the other (except for a custom of bookkeeping treating it as common stock, which could not be controlling), under Rem. Comp. Stat., § 7002, requiring every warehouseman to make a report to state officers showing the grain received and shipped from each licensed warehouse.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered June 28, 1922, in favor of the plaintiff, notwithstanding the verdict of a

[1]Reported in 215 Pac. 26.

jury rendered in favor of the plaintiff, in an action for conversion.   Affirmed.

*Adams & Miller,* for appellant.

*W. M. Nevins,* for respondent.

MAIN, C. J.—The plaintiff brought this action for the value of certain wheat, which had been placed in an elevator operated by the defendant, after a demand for the wheat had not been complied with.   The cause was tried to the court and a jury, and resulted in a general verdict in favor of the plaintiff in the sum of $139.60.   In addition to the general verdict, the jury made the following special findings:   First, that the defendant had not issued and delivered warehouse receipts covering the wheat delivered by the plaintiff; second, that the plaintiff had demanded the wheat; and third, that, at the time of the demand, the storage charges had been tendered.   Thereafter the plaintiff moved for a judgment notwithstanding the verdict, which motion was sustained and a judgment entered in his favor in the sum of $1,471.49.   From this judgment, the defendant appeals.

The facts may be summarized as follows:   During the year 1920, and for some years prior thereto, the appellant, a corporation, had operated two warehouses which were situated upon a spur of the Chicago, Milwaukee & St. Paul Railway Company at Packard, this state.   One of the warehouses was owned by the appellant and the other was leased by it.   The larger of the two was what is referred to as the west warehouse, and the other as the east warehouse, the distance between the two being approximately 180 feet.   Each warehouse had its own platform for receiving wheat, and the wheat stored in each was delivered directly into cars upon the spur track.   Each had a separate

license number and bond. Under the law as it then was, and now is (Laws of 1919, p. 601, ch. 189, § 24; amended by Laws of 1921, p. 544, ch. 145, § 5) Rem. Comp. Stat., § 7002 [P. C. § 2665], every warehouseman was required to make a report under oath to the state authorities, showing the amount of grain received and shipped from each licensed warehouse. There was no physical connection between the two warehouses. The motion for judgment notwithstanding the verdict resulted from the special findings of the jury. There is evidence to support these findings which it is unnecessary here to review in detail.

During the month of May, 1921, the west warehouse burned. The wheat which had been delivered by respondent to the appellant during the year 1920 was stored in the east warehouse. After the fire, the respondent desired his wheat or the market price for it at the time. This was refused because the appellant took the position that the wheat in the two warehouses had become common stock and that the respondent was only entitled to share pro rata with all others who had wheat in either warehouse. The respondent does not claim that he was entitled to the possession of his identical wheat, but recognizes the rule that wheat of like quality and quantity would satisfy his demand.

The principal question, and it seems to us the only important one, is whether the respondent was entitled to wheat of the same quality and quantity that he had stored in the warehouse which had not burned, or was required to take his pro rata share with all of the others. The answer to this question depends upon whether the wheat in the two warehouses became common stock. The rule appears to be that a concern operating two or more plants for the storage of grain may make common stock of all of such commodity, so that,

in case of the destruction of one plant, all of the owners who have deposited in any of the plants would be obliged to contribute to the loss; but where the commodity in fact has not been made common stock, if it is such it must be by reason of the express terms of a contract. In 5 R. C. L., at page 1051, there is this statement of the rule:

"But while it seems that a concern operating a number of plants for the storage of a commodity such as grain or oil, whether in one place or in many places, may make common stock of all of such commodity, so that in the case of the destruction of one plant, all of the owners who have deposited in any of the plants would be obliged to contribute to the loss, still it has been held that this result cannot follow if the property deposited has not in fact been made common stock, unless the contract purporting to make it so has been expressed in unmistakable terms."

A similar statement of the rule will be found in *Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co.*, 127 La. 971, 54 South. 318, Ann. Cas. 1913E, p. 679.

In the present case there was no contract between the parties which would make the wheat in the two warehouses common stock, assuming, as we must, that the finding of the jury that no warehouse receipts had been issued and delivered was correct.

The question then is whether the wheat in the two warehouses had in fact become common stock. As above stated, they had no physical connection with each other. Each was licensed and operated independent of the other, except that the office of the company was in the warehouse which burned, and, according to its books, the wheat in the two warehouses was treated as common stock. This custom of bookkeeping can have no controlling effect, as the respondent was not

in any manner bound by it. In the case of *Scott v. Schofield,* 101 Iowa 15, 69 N. W. 1127, it was held that potatoes put in one end of a trench and potatoes belonging to another person stored in the other end, but which were separated by a partition of hay, were not commingled so as to become common stock. It seems to us that it must be held that the wheat in the two warehouses in the case now before us, under the undisputed evidence, did not become common stock in fact.

There is some discussion in the briefs as to on which of the parties rested the burden of proof with reference to what caused the fire which destroyed the west warehouse. As we view it, this question is entirely immaterial in this case, because the respondent's wheat being stored in the warehouse which did not burn, and it not having become common stock with that in the warehouse which did burn, the case must be determined without reference to the cause of the fire.

The judgment will be affirmed.

HOLCOMB, TOLMAN, and PEMBERTON, JJ., concur.